AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Facebook URL:
https://www.facebook.com/laprince.givens.75
Friend Identification Number: 100012701761652

)
)
)
)
)
)

Case No. 16-M-162

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. Section 2250(a)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeremy Loesch, Deputy U.S. Marshal
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: Oct. 27, 2016
3:05 p.m.

*Judge's signature*

City and State: Milwaukee, WI — Honorable David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

Case 2:16-mj-00162-DEJ   Filed 12/09/16   Page 1 of 13   Document 1

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Jeremy Loesch, being first duly sworn, states that:

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook, Inc. to disclose to the government records and information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a social networking company headquartered at 1601Willow Road, Menlo Park, CA 94025. The account to be searched is described as:

   Facebook URL: https://www.facebook.com/laprince.givens.75
   Friend Identification Number: 100012701761652

   The facts to establish probable cause for issuing the search warrant are as follows:

## Background

2. I am a Supervisory Deputy with the U.S. Marshals Service, having been so employed for over 13 years. As part of my duties, I investigate violations of federal and state laws, including those relating to fugitives. I have also received specialized training in the investigation of violations of the Adam Walsh Act.

3. The information contained in this affidavit is based on my training and experience, as well as information provided to me by other law enforcement officers and citizens, all of whom I believe to be truthful and reliable. This affidavit is not an exhaustive account of everything I know about this case. Rather, it contains only the facts that I believe are necessary to establish probable cause to search the Facebook account, described above, used by Patrick Deviance Givens (hereinafter Givens).

## Facts Establishing Probable Cause

4. On July 15, 2003, Givens was convicted in Cook County Circuit Court, Chicago, Illinois of Predatory Criminal Sexual Assault, in violation of Illinois Compiled Statute 720 5/12-14.1, case number 02CR3082601.

5. Law enforcement reports show that Givens, who was 21 years old, chased his 9-year-old victim when she ran to her family's apartment. The victim attempted to close the apartment door, but Givens pushed the door open. Givens then dragged the victim to a bedroom where he sexually assaulted her. The sexual assault only stopped when the victim's father entered the apartment looking for his daughter. Givens attempted to hide in the bedroom closet but was found. When challenged by the victim's father Givens fled

1

the apartment.

6. During the investigation Givens was interviewed by law enforcement. Givens was advised of his *Miranda* rights, voluntarily waived his rights and spoke to the Investigators. Givens told the Investigators that he had asked his victim for some Neosporin to disinfect a cut. His victim got the apartment keys from her mother and Givens followed her into the apartment. Givens stated that once in the apartment his 9-year-old victim lit a cigarette and they smoked it together. Givens stated that he then followed his victim into her bedroom and laid down on her bed. At that time Givens stated that his 9-year-old victim asked him if he wanted oral sex. Givens stated that the victim then removed her clothes and then removed his shorts at which time the victim took out Givens penis, got on top of him and began to grind on him.

7. Court documents show that Givens was originally charged with multiple crimes as a result of his conduct.
   i. 2 counts of Predatory Criminal Sexual Assault in violation of Illinois compiled statute 720-5/12-14.1(A)(1)
   ii. 2 counts of Home Invasion/Violence Against Person, in violation of Illinois compiled statute 720-5/12-11(a)(6)
   iii. Criminal Sexual Assault/Force, in violation of Illinois Compiled statute 720-5/12-13(A)(1)
   iv. 2 counts of Criminal Sexual Assault/Can't Consent, in violation of Illinois Compiled statute 720-5/12-13(A)(2)

   Upon pleading guilty to a single count of Predatory Criminal Sexual Assault the remaining counts against him were dismissed.

8. As a result of Givens' conviction he is required to register as a sex offender for the remainder of his life.

9. On June 22, 2010, Givens was released from the Dixon Correctional Center, Dixon, Illinois. On that date Givens was given notice of his requirement to register as a sex offender with the Illinois Sex Offender Registry (ILSOR). Form ISP4-84c, Illinois Sex Offender Registration Act Notification Form was reviewed with Givens by an Illinois Department of Corrections employee. This form is not a registration form but notifies an offender of his duty to register as a sex offender upon his/her release from custody. Language contained within this form read in part:

   > Within 3 days of changing your address, you must report your new address in person with the law enforcement agency with whom you last registered. You must, within 3 days of changing your address, register in person with the police department or if none, the sheriff's office having jurisdiction at your new address. Temporary absences of more than 3 days in a calendar year require you to register your new address.

must notify the agency with whom you last registered in person of your new address, at least 3 days before moving.

Under the Adam Walsh Child Protection and Safety Act of 2006, 18 United States Code Section 2250, if you travel to another state and fail to register as required, you are also subject to federal prosecution that carries penalties of a fine and/or imprisonment up to 10 years.

10. On June 29, 2016, ILSOR confirmed that Givens has never formally registered as a sex offender in Illinois. From his release from custody on June 22, 2010 to his contacts with law enforcement and the Wisconsin Sex Offender Registry (WISOR), detailed below, his location and residence were unknown and he was non-compliant.

11. On April 25, 2011, the Milwaukee Police Department (MPD) received a complaint from P.H. P.H. a resident of Chicago, Illinois identified herself as the grandmother of Givens 9-year-old son, C.D. P.H. reported that based upon conversations she had with C.D. she believed that Givens had sexually assaulted C.D. Furthermore, P.H. did not want to bring the kids back to Milwaukee because Givens would be there. P.H. identified Givens to MPD as a non-compliant sex offender from Illinois who was living in Milwaukee. P.H. then brought C.D. to the Sensitive Crimes Division of MPD.

12. On April 25, 2011, C.D. was interviewed by a MPD Officer. During the interview C.D. disclosed that on one occasion Givens had grabbed his buttocks hard as he was getting up from a chair. C.D. then left the room and went upstairs to his room. Givens followed C.D. to his room where Givens pulled his pants down and exposed his penis. Givens told C.D. to "rub it." C.D. denied rubbing Givens' penis and stated that was the only time it happened.

13. On April 27, 2011, Givens was interviewed by a MPD Detective about the conduct described in paragraph 12. Givens denied having ever asked his son to touch his penis. Givens believed that P.H. had coached C.D. in what to say to law enforcement.

14. A review of the Wisconsin Circuit Court database does not reflect a criminal charge filed against Givens as a result of the above accusation.

15. On May 12, 2011, now retired Senior Inspector (SI) Amerson, with the U.S. Marshals Service, reported being contacted by the U.S. Marshals Service, Northern District of Illinois about Givens presence in Milwaukee.

16. On May 13, 2011, SI Amerson opened an investigation into Givens for Failure to Register as a Sex Offender in violation of the Adam Walsh Act, Title 18 U.S.C. 2250(a).

17. On June 7, 2011, SI Amerson reported locating and contacting Givens at XXXXA N. Buffum St. Milwaukee, Wisconsin. Amerson reported that he, SI Abdullah and Wisconsin Sex Offender Registry (WISOR) Sex Offender Registration Specialist

3

17. On June 7, 2011, SI Amerson reported locating and contacting Givens at XXXXA N. Buffum St. Milwaukee, Wisconsin. Amerson reported that he, SI Abdullah and Wisconsin Sex Offender Registry (WISOR) Sex Offender Registration Specialist Engelken observed Givens exit the residence. The group approached Givens and spoke with him. Initially Givens denied his true identity but admitted he was Givens when pressed by SI Amerson. During the interview Givens admitted to residing in Milwaukee since his release from prison in June of 2010. Givens stated that he resided in Milwaukee with his sister, N.G. at XXXX W. Wright St. Milwaukee, Wisconsin, but that he also stays at the Buffam Street address. Although admitting his residence, Givens denied any knowledge of having to register as a sex offender. At that time Specialist Engelken explained to Givens his requirements to register and did register Givens as a sex offender with WISOR.

18. On July 31, 2011, SI Amerson closed his investigation into Givens.

19. Givens has acknowledged his requirement to register as a sex offender with WISOR by signing form DOC-1759 and 1759A, "Sex Offender Registration" on at least seven occasions between June 7, 2011 and March 5, 2014. Language contained within these forms reads in part;

> You must report any changes in your residence, employment status and school enrollment to DOC SORP throughout your required registration period within 10 days of the change.
>
> If you move, attend school, obtain employment or carry on a vocation in another state, you must notify Wisconsin SORP 10 days **prior** to any changes. You must also contact SORP in that state. Therefore, you may be required to register in multiple states.
>
> Givens' initials appear next to the last paragraph in the left margin and at the end of the paragraph.
>
> In accordance with Wisconsin Statute 301.45, I am registering the above information as true and accurate. I understand that I am legally required to supply this information annually or every 90 days, as prescribed by law. I also understand that I must provide any changes of information within 10 calendar days of any change in residence, employment, school enrollment or vehicle registration. I understand that failure to comply. Or providing false information, may be cause for revocation and/or further criminal prosecution. I also understand that this information will be used for law enforcement purposes, and other purposes established by law.

4

20. Records from WISOR show that on February 21, 2014, Givens called WISOR and reported a change of address to XXX W. Clarke St. Milwaukee, WI.

21. On February 24, 2014, WISOR mailed a residence verification letter to the Clarke Street address. On March 13, 2014, Givens was labeled as non-compliant due to the letter not being returned by Givens.

22. On March 20, 2014, WISOR reported receiving the letter sent to Givens on February 24th and restored Givens' status to compliant.

23. On May 30, 2014, WISOR sent a verification letter Givens' residence on Clarke Street. On June 18, 2014, Givens was labeled as non-compliant due to the letter not being returned by Givens.

24. On July 21, 2014, WISOR sent an additional residence verification letter to Givens at his residence on Clarke Street. On August 18, 2014, WISOR received this letter as return to sender. The letter was marked as "vacant."

25. On February 25, 2015, WISOR received an updated address for Givens from the Department of Children and Family Services as, XXXX N. 36th St. Milwaukee, WI. On February 26, 2015, a residence verification letter was sent to Givens at this address in an attempt to locate him and restore his compliance with WISOR. Subsequent residence verification letters were also sent to this address on April 9, 2015 and June 1, 2015.

26. On July 9, 2015, WISOR received a response letter from Givens verifying his address as XXXX N. 36th St. Milwaukee, WI. Givens status with WISOR was changed to compliant.

27. On September 17, 2015, WISOR received a phone call from Givens' sister, N.G. N.G. reported that she just became aware that Givens was using her address, XXXX N. 36th St. Milwaukee, WI. N.G. reported that Givens has never lived with her at this address. WISOR informed N.G. that a residence verification letter sent to Givens at the address had been returned on July 9, 2015. N.G. reported that the mother of Givens' child lives with her and that she must have sent the letter back for him. On this date Givens status with WISOR was changed back to non-compliant.

28. On December 22, 2015, Givens was charged in Milwaukee County Circuit Court, Milwaukee, Wisconsin with Failure to Register as a Sex Offender in violation of Wisconsin statute 301.45(6)(a)(1) and a warrant issued for his arrest. The warrant is not extraditable outside of Wisconsin.

29. On April 12, 2016, your Affiant received a referral for the investigation of Givens from the

5

Milwaukee County Sheriff's Office. The Sheriff's Office reported having received information that Givens recently applied for employment in Indiana and was using an address of, XXXX Columbia St. #4 Lafayette, Indiana.

30. Records checks found that Givens is in possession of a valid Indiana driver's license, issued on February 20, 2016, expiration May 30, 2022. Givens residence and mailing addresses are listed as XXXX Columbia St. Apt. 4 Lafayette, Indiana.

31. On June 1, 2016, your Affiant opened an investigation into Givens for Failure to Register as a Sex Offender in violation of the Adam Walsh Act, Title 18 U.S.C. 2250(a).

32. On June 1, 2016, your Affiant conducted open records searches of Facebook.com and located three accounts belonging to Givens. The accounts are identified as:

> Facebook URL: htttps://www.facebook.com/laprince.givens
> Friend Identification Number: 100010788840397
>
> Facebook URL: https://www.facebook.com/laprince.givens.7
> Friend Identification Number: 100012365132020
>
> Facebook URL: htttps://www.facebook.com/laprince.givens.75
> Friend Identification Number: 100012701761652

33. On January 15, 2016, Givens posted on the laprince.givens account the comment, "5 more days I'm moving out of Milwaukee, See what this Indiana life be like…the change might be good."

34. On February 4, 2016, Givens posted on the laprince.givens, account the comment, "I don't think I can stay out here in Lafayette Indiana its like the house on the haunted hills in this bitch."

35. Within all three accounts your Affiant observed pictures of Givens that were verified as being Givens through comparison with his Wisconsin and Indiana driver's license photos.

36. On August 10, 2016, your Affiant confirmed that all three accounts are active public accounts with recent activity in February, May, June and July of 2016.

37. On September 28, 2016, Facebook.com account screen name, Keosha Maria Makinachange (hereinafter Keosha account), posted a photo of a herself and Givens eating ice cream.

38. On October 27, 2016, your Affiant conducted an open search of Facebook.com and located the Keosha account, where I observed the following on this account.

6

39. Posted under, "Details About Keosha" she lists her nickname as, "Mrz Givens".

40. On April 4, 2014, the Keosha account posted she was, "In a Relationship with LaPrince Givens". The name LaPrince Givens is posted as a hyperlink that when clicked on opens the laprince.givens.7 account.

41. On October 1, 2016, the Keosha account posted a photograph of a late model red Dodge Stratus, 4-door vehicle.

42. On October 3, 2016, the Keosha account posted a photo showing a partial Wisconsin license plate of 895-Z.

43. On October 27, 2016, your affiant conducted a search of the Wisconsin Department of Transportation and identified this vehicle as a 1999, 4-door, red, Dodge Stratus, Wisconsin license 895-ZBX. The registered owner of this vehicle was identified as M.L.

44. On October 27, 2016, your Affiant obtained a Wisconsin driver's license photograph of M.L. Through a comparison of the driver's license photograph to photographs on the Keosha account it was confirmed that the woman using the Keosha account is M.L.

45. On October 15, 2016, M.L. posted a photo on the Keosha account. Another Facebook.com user posted a comment to this photo of, "Yall still on 22"? M.L. responded, "Yup".

46. Records checks of M.L. show that on October 13, 2016, M.L. was arrested by the West Allis Police Department, West Allis, Wisconsin. The address noted on M.L.'s Wisconsin criminal history from this arrest is XXXX S. 22nd St. Milwaukee, WI 53204.

47. On October 27, 2016, your Affiant conducted a search of Givens Wisconsin driver's license history. Givens' address on his driver's license is identified as XXXX S. 22nd St. #A Milwaukee, WI 53204, issued on September 11, 2015, expiration on May 30, 2023. In addition notations on this record show that Givens reported having moved to Indiana on August 16, 2016 and having moved back to Wisconsin on September 27, 2016.

48. On October 27, 2016, I confirmed that accounts laprince.givens and laprince.givens.7 remain active public accounts. Account laprince.givens.75 is not viewable under an open search of Facebook.com and has possibly been restricted to private viewing.

49. On October 27, 2016, I searched the Indiana Sex Offender Registry on-line data base and found no record of Givens having registered as a sex offender.

50. On October 27, 2016, I searched the Wisconsin Sex Offender Registry on-line data base which noted Givens current residence and location as unknown.

7

51. Through my training and experience, I know that people who use social media sites such as Facebook maintain relationships with family and friends through private messages along with posting and exchanging of pictures.

## TECHNICAL BACKGROUND

52. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

53. Facebook asks users to provide basic contact information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

54. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.

55. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

56. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

8

57. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

58. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

59. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

60. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

61. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

62. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

63. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

64. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address

9

on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

65. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

66. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application.

67. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment A under the following accounts:

>Facebook URL: https://www.facebook.com/laprince.givens.75
>Friend Identification Number: 100012701761652

## CONCLUSION

68. Based on the aforementioned information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses may be located within the aforementioned Facebook account in violation of Adam Walsh Act, Title 18 U.S.C. Section 2250(a).

69. I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

# ATTACHMENT A

Information associated Facebook URL: Facebook URL:

Facebook URL: https://www.facebook.com/laprince.givens.75
Friend Identification Number: 100012701761652

from June 18, 2014, through present, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a social networking company headquartered at 1601 Willow Road, Menlo Park, CA 94025.

# ATTACHMENT B

I. Information to be disclosed by Facebook, Inc.

To the extent that the information described in Attachment B is within the possession, custody, or control of Facebook, Inc., Facebook, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A from June 18, 2014, through the date of this search warrant:

a. The contents of all communications stored in the Facebook, Inc. account for the subscriber identified as follows:

> Facebook URL: https://www.facebook.com/laprince.givens.75
> Friend Identification Number: 100012701761652

b. User Basic Subscriber Information (BSI), User Neoprint, User Photoprint, Group Contact Info, Private Messages, IP Logs;

c. All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

d. All communications stored in the account, whether sent from or received in the account, including any "chat or messaging or other communications," as well as such communications held in a "Deleted" status;

e. All address books, contact lists, friends lists, buddy lists, or any other similar compilations of personal contact information associated with the accounts;

f. All records or other information regarding the identification of the accounts, including full name, physical address, mailing address, residential or business address; other contact or identifying information such as telephone numbers and other identifiers; including subscriber names, user names, screen names or other identities associated with the account; records of session times and durations, the date on which the accounts were created, the length of service, the types of service utilized, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account statuses, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

g. All records pertaining to communications between Facebook, Inc., and any person regarding the accounts, including contacts with support services and records of actions taken.

h. BACKUPDATA maintained in connection with the account.